UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Olivia D. Carter,

                     Plaintiff,

                                                      **Hon. Hugh B. Scott**
                                                         07-CV-219A

                        v.

                                                                  **Report**
                                                                      **&**
                                                                 **Recommendation**

COMMISSIONER OF SOCIAL SECURITY[1],

                     Defendant.

Before the Court is the defendant's motion for judgment on the pleadings (Docket Nos. 5).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the partially favorable final determination of the Commissioner of Social Security that plaintiff was not disabled and, therefore, is not entitled to disability insurance benefits (DIB) or Supplemental Security Income (SSI).

---

[1]For convenience, defendant will be identified by the official title only.  See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

## PROCEDURAL BACKGROUND [2]

The plaintiff, Olivia D. Cater, ("Carter" or "plaintiff") filed an application for DIB and SSI benefits on December 4, 2003 (R. 82-84). Her claim was denied on March 11, 2004. (R. 33). She requested and was provided an administrative hearing. On August 25, 2005, Administrative Law Judge ("ALJ") Gerald J. Spitz denied Carter's applications (R. 49-56). ALJ Spitz held that the plaintiff retained the residual functional capacity to perform work existing in significant numbers in the national economy. (R. 56). The plaintiff appealed to the Appeals Council which vacated ALJ Spitz' decision and remanded the matter for further proceedings. (R. 61-63). The Appeals Council held that the ALJ's rationale did not properly address the plaintiff's severe mental impairment or her subjective complaints; did not properly reflect Carter's prior work history and failed to obtain testimony from a vocational expert. (R. 61-62). A second administrative hearing was held before ALJ Timothy McGuan. On November 9, 2006, ALJ McGuan found that Carter did retain the residual functional capacity to perform work that exists in significant numbers in the national economy and denied benefits. (R. 14-28). ALJ McGuan's decision became the final decision of the Commissioner when it was affirmed by the Appeals Council on March 16, 2007 (R. 6).

## FACTUAL BACKGROUND AND VOCATIONAL EVIDENCE

The plaintiff asserts that she became disabled on June 30, 2003 after having been assaulted allegedly by several men (R. 99, 184, 205, 284, 318). Carter testified that she was

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

disabled due to back, neck, and hip pain, as well as difficulty sleeping and walking long distances. (R. 339-40). She was twenty-four years old at the time of her alleged onset of disability. (R. 33).

Carter graduated high school with an Individualized Education Program diploma. (R. 336; 105), but was classified as being in the "intellectually deficient range (R. 176). Her past relevant work included that of a dietary aide at a nursing home, a temporary worker at a factory, and a filing clerk (R. 99). Carter testified that she also worked as an aide to handicapped residents living in a group home from February 2005 through June 2005. (R. 336, 338). She assisted the residents with their activities of daily living, cooked, cleaned rooms, drove a van, and took the residents wherever they needed to go. (R. 336- 37). The plaintiff estimated that she could walk for one mile at a time before she needed to rest. (R. 121). She had no problems paying attention and/or following instructions. Plaintiff had no difficulties getting along with bosses or others in authority. (R. 121) She had trouble remembering things, but was not affected by stress or changes in schedule. (R. 122).

## MEDICAL AND VOCATIONAL EVIDENCE

On June 29, 2003, plaintiff was seen in the emergency room of Inter-Community Memorial Hospital for complaints of abdomen, left shoulder, and groin pain. (R. 182-84). Plaintiff reported that she had been assaulted the previous evening. (R. 184). Various x-rays of her left shoulder, pelvis, abdomen, and chest revealed no abnormality. (R. 186). The attending physician diagnosed Carter as suffering from a left shoulder sprain and pelvic sprain. (R. 185). Further x-rays of plaintiff's chest and abdomen, lumbosacral spine, and cervical spine, taken on

July 7, 2003, July 23, 2003, and August 18, 2003, respectively, all found no abnormalities (R. 191-93).

On November 21, 2003, Carter was twice seen in the emergency room of Lockport Memorial Hospital for complaints of head, face, rib, and right ankle pain. (R. 195, 198). At this time, she again reported that she had been assaulted the previous evening. (R. 195). On this occasion, *x*-rays revealed a fractured right tenth rib. (R. 200). Other tests, including x-rays of the plaintiff's abdomen, right ankle, and left hand, as well as a computerized tomography (CT) scan of her pelvis were unremarkable. (R. 201-04). Carter was diagnosed as having a fractured right rib, facial and abdomen contusions, and a sprained right ankle. (R. 196, 199).

On January 21, 2004, Dr. Fenwei Meng, a consultative physician, examined plaintiff at the request of the State agency (R. 205-08). Upon examination, Dr. Meng observed that plaintiff had a normal gait and stance, as well as a full squat. (R. 206). The plaintiff's cervical and lumbar spines each had a full range of motion (ROM) with some complaints of mild pain upon forward bending. (R. 206-07). An MRI scan of plaintiff's lumbar spine revealed slight scoliosis. (R. 209). Plaintiff's upper and lower extremities each had a full ROM and full muscle strength. (R. 207). Straight leg raising tests were negative. Reflexes and sensations were normal. Hand and finger dexterity was intact. Grip strength was full. (R. 207). Dr. Meng diagnosed back pain, ruled out muscle damage, as well as posttraumatic stress disorder. (R. 207). According to Dr. Meng, the plaintiff's had no limitations in dexterity and gross activity with respect to her upper extremities. He found that Carter had mild limitations in her cervical and lumbar spines with bending, extension, twisting, and heavy lifting. He found no limitations in her lower extremities with respect to walking and standing, as well as going up and down stairs. (R. 207).

On January 21, 2004, Dr. Thomas Ryan, a consultative psychologist, evaluated plaintiff at the request of the State agency. (R. 210-13). Upon evaluation, Dr. Ryan observed that the plaintiff was fully oriented. (R. 212). Carter's thought process was found to be coherent and goal directed with no hallucinations, delusions, or paranoia. (R. 211). Her affect was appropriate to speech and thought content with underlying depression. (R. 211). The plaintiff's attention and concentration, as well as her recent and remote memory were mildly impaired due to limited intellectual functioning. Plaintiff's cognitive functioning was slightly in the borderline range. Her insight and judgment were fair. (R. 212). Dr. Ryan assessed that plaintiff could follow and understand simple instructions as well as perform simple rote tasks. The plaintiff could maintain attention and concentration, perform simple tasks, and learn new tasks. She was found to have difficulties relating with others, making decisions, and dealing with stress. (R. 212). Dr. Ryan diagnosed the plaintiff as suffering from post-traumatic stress disorder. (R. 213).

On January 21, 2004, Dr. Harry Zirma, a podiatrist, completed a medical questionnaire at the request of the State agency. (R. 228-35). Dr. Zirma noted that he had last seen plaintiff on January 2, 2002. (R. 228). As of that date, Dr. Zirma diagnosed the plaintiff as suffering from plantar fasciitis of the feet. (R. 228). He observed that plaintiff could tandem walk; had no significant abnormality in her gait; normal findings as to touch, heat, cold, pinprick, vibration, joint position and sterepgnosis. (R. 231-232). Dr. Zirma assessed that plaintiff could occasionally lift up to five pounds, and could stand and/or walk for less than two hours during the course of an eight-hour workday, but was otherwise unlimited by the impairment. (R. 234).

The record reflects that Carter was under the care of Dr. Fred Hirsh, or other physicians at the Highgate Medical Group for at least a few years after the June 29, 2003 attack. (R. 222). On

October 21, 2003, Dr. Hirsh stated that Carter could "return to work with a 20 pound weight lifting restriction" and that she was to "avoid repetitive bending." (R. 223). On November 3, 2003, Dr. Hirsh repeated his opinion that the plaintiff could "return to work with a 20 pound weight lifting restriction." (R. 222). On February 17, 2004, Dr. Hirsh, submitted an residual functional capacity assessment. (R. 214-25). He found that the plaintiff had a normal gait and stance, as well as full muscle strength and a full ROM throughout the upper and lower extremities. (R. 217, 224-25). Carter's lumbar spine had a limited ROM. (R. 225). However, her reflexes and sensations were stated to be normal. (R. 216, 218). Dr. Hirsh stated that the plaintiff's affect was mildly depressed. (R. 218). He diagnosed the plaintiff as suffering from cervical and lumbar strain, resolving right rib fracture, and depression. (R. 214). He assessed that plaintiff could occasionally lift and carry twenty pounds; that she had no limitations in sitting, standing, or walking. (R. 219-220). Dr. Hirsh again concluded that Carter was "able to work with a [20 pound] weight limit" and avoiding "repetitive bending and twisting." (R. 219).

On October 17, 2005 and October 25, 2005, Dr. Nicholas Varallo examined plaintiff for complaints of back pain. (R. 275-280). Dr. Varallo's reports for the visits indicate that on both occasions, Carter failed to complain of persistent or recurrent depression, or any initial or fragmented sleep disturbances. (R. 276, 279). Upon examinations, Dr. Varallo observed pain on palpation of the trapezius and lower lumbar area (R. 276, 279) and he diagnosed the plaintiff as suffering from an unspecified back disorder. (R. 277, 280). Carter was seen by Dr. Jerry Tracy, a pain management specialist, from November 4, 2005 through March 17, 2006. A report prepared by Annette Tuszynski, a nurse practitioner and an associate of Dr. Tracy's, stating that Carter had undergone x-rays of the cervical and lumbar spine on November 28, 2005, both reflecting

"normal and essentially negative" findings. (R. 281, 327). According to this report, at that time Carter stated that she had not been seen by a psychiatrist, but that she intended to "follow-up" with a psychiatrist in Lockport. (R. 281). The report reflects that the plaintiff's sleep was "restored" with Restoril and that the plaintiff denied any associated anhedonia, anxiety, difficulty concentrating, insomnia, difficulty with memory, homicidal thoughts, suicidal thoughts or weight gain. (R. 282, 313). Dr. Tracy assessed myofascial cervical, thoracic, and lumbar pain, as well as depression with possible anxiety disorder. (R. 285-286). In a report dated March 21, 2006, Dr. Tracy stated that plaintiff could lift no more than ten pounds; could sit, stand, or walk no more than two hours each during the course of an eight-hour workday; could sit or stand twenty minutes at a time before she needed to alternate positions; needed the opportunity to walk around every twenty minutes for about five minutes at a time, as well as lie down every two hours; that Carter's pain was increased with bending and/or twisting, as well as prolonged sitting, lying down, or walking; she could not twist, stoop, crouch, or climb ladders; she could occasionally climb stairs; her ability to reach, handle, push, and pull were affected by her impairment due to mechanical and myofascial pain which produced pain with movement; she needed to avoid concentrated exposure to wetness and all exposure to temperature extremes, humidity, and hazards such as machinery and heights. (R. 302-305). Dr. Tracy recommended a functional capacity evaluation to determine plaintiff's exact physical capabilities. (R. 305).

On April 6, 2006 and April 18, 2006, Carter was seen by Nurse Practitioner Tuszynski for complaints of back pain. (R. 306-11). The plaintiff again denied anhedonia, anxiety and insomnia, as well as concentration or memory difficulties. (R. 307, 310). On April 6, 2006, plaintiff told Ms. Tuszynski that Lortabs had improved her pain and that the trigger point

injections had helped (R. 309). Examination on both dates revealed normal gait, reflexes, and sensations; while the plaintiff's lumbar spine had a limited ROM. (R. 307, 310) There were some trigger points at the lower lumbosacral segments and sacroiliac joints. Palpation of the neck revealed no tenderness or trigger points. The reports for both dates state that Carter "continues doing her daily household chores." (R. 306, 309). On April 18, 2006, Tuszynski opined that plaintiff was "temporarily, mildly disabled." (R. 307).

Records from the Lockport School District reflect that Carter was classified as learning disabled (R. 138). An individualized Educational Plan ("IEP") was developed for her and despite significant academic difficulty, her intellectual aptitude was "generally borderline to low average range." (R. 156-157, 160).

At the administrative hearing, the ALJ asked Julie Andrews, a vocational expert, to consider a hypothetical individual of the same age, educational background, and past work experience as plaintiff. (R. 364). Moreover, during the course of an eight-hour workday, such individual could sit for eight hours; stand and/or walk for up to six hours; required a sit/stand option; lift twenty ponds occasionally and ten pounds frequently; needed to avoid repetitive bending and twisting; could not perform complex or detailed tasks; and could interact with co-workers frequently and the public occasionally. (R. 362). Andrews opined that such a hypothetical individual could perform several occupations which exists in significant numbers in the national economy. (R. 364). She cited small products assembler (513,000 jobs nationally, 1380 jobs regionally) and mail clerk (2,900,000 jobs nationally, 915 jobs regionally) as examples of such occupations. (R. 365). Andrews testified that the examples she provided were consistent with the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT). (R. 365, 373).

However, with regard to the sit/stand option, which is not addressed by the DOT, Andrews stated that her conclusions were based upon her own professional experience and knowledge. (R. 373).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that plaintiff was not disabled is supported by substantial evidence. See 42 U.S.C. §405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.

1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38 (2d Cir. 1972).

The ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past in order to determine whether an admitted impairment prevents a claimant from performing past work.  20 C.F.R. §§ 404.1520 &

416.920(e).  The ALJ must consider all symptoms, and the extent to which the symptoms can reasonably be accepted as consistent with objective medical evidence and any statements of accepted medical opinions that reflect the nature and severity of the impairments and resulting limitations.  20 C.F.R. §§ 404.1529 & 416.929.

 The ALJ, may in determining plaintiff's medical impairment, afford controlling weight to the opinion of a treating physician that is supported by medical findings.  <u>Rosa v. Callahan</u>, 168 F.3d 72, 78-79 (2d. Cir. 1999).  Where the treating physician's opinion is not supported by medical evidence or is contradicted by other substantial evidence in the record, the ALJ is entitled to use discretion in weighing the medical evidence as a whole.  <u>Kamerling v. Massanari</u>, 295 F.3d 206, 209 (2d. Cir. 2002).  The ALJ must consider various "factors" if he or she refuses to give controlling weight to the treating physician.  20 C.F.R. §§ 404.1527(d)(2).  Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that support or contradict the opinion.  <u>Id.</u>  <u>See</u>  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004).

 In the instant case, the ALJ determined that although Carter suffered from impairments of her cervical and lumbar spine, with myofascial pain and reactive depression (R.  17), she retained the residual functional capacity to perform light work which did not require lifting more than 20 pounds, frequent bending or twisting, nor the performance of more than simple and routine tasks. (R. 17, 22).  The ALJ determined that although the plaintiff's medically determinable impairments could be expected to produce the symptoms claimed by the plaintiff,

that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (R. 24). In support of his conclusion, the ALJ cited to the reports of the plaintiff's treating physician Dr. Hirsh, as well as the consistent reports of Dr. Meng, and Dr. Ryan. (R. 24-25). He gave limited weight to the reports of Dr. Tracy, finding that Dr. Tracy's conclusions were not supported by objective medical evidence in the record. (R. 26). The ALJ noted, in any event, that the assessment from Dr. Tracy's nurse practitioner was that the plaintiff suffered only from a mild, temporary disability. (R. 26).

The plaintiff contends that the ALJ failed to apply the treating physician rule because he gave limited weight to Dr. Tracy's residual functional capacity assessment. (Docket No. 17 at page 3). The plaintiff asserts that Dr. Tracy's findings could support a finding of fibromyalgia (Docket No. 17 at pages 3-4). However, the plaintiff fails to point to any such diagnosis by Dr. Tracy (or any other physician) in the record. At best, Dr. Tracy's assessment is somewhat inconsistent with the of Dr. Hirsh. The clinical findings in the record, which demonstrate limited range of motion and some back soreness, but are generally negative of any spinal impingement, may be fairly interpreted as supporting the opinion of Dr. Hirsh. It should be noted that the record reflects that the plaintiff was seen primarily by Dr. Tracy's nurse practitioner, Ms. Tuszynki, who opined that Carter suffered from only a mild temporary disability. (R. 307). The record also includes evidence to the effect that the plaintiff performed work, as an aide to handicapped residents living in a group home from February 2005 through June 2005 – after her alleged onset date. (R. 336, 338). In this capacity, she assisted the residents with their activities of daily living, cooked, cleaned rooms, drove a van, and took the residents wherever they needed to go. (R. 336-37). While the plaintiff's performance of this work is of limited value, it is inconsistent with the

residual functional capacity assessment provided by Dr. Tracy. The plaintiff testified that she left that job because she started having "problems with her boss" due to tendonitis in her foot. (R. 339). The record does not reflect that the plaintiff was treated for this impairment since 2002, well prior to her alleged onset date. The ALJ found that the plaintiff's bilateral plantar fasciitis was not severe. (R. 21). The Court cannot conclude that this determination was improper based upon the record in this case. The plaintiff also claims that the ALJ improperly assessed her credibility (Docket No. 17 at page 5). The clinical findings of the record do not necessarily corroborate the subjective complaints of the plaintiff. Further, the record reflects inconsistent statements on the part of the plaintiff as to the nature and extent of many of her symptoms. Dr. Varallo's reports indicate that Carter denied persistent or recurrent depression or sleep disturbances. (R. 276, 279). According to the reports from Nurse Practitioner Tuszynski, the plaintiff denied she had anxiety or insomnia. (R. 307, 310). The reports from Ms. Tuszynski reflect that Carter's impairments did not preclude her from performing "her daily household chores." (R. 306, 309, 312, 315). These inconsistencies support the ALJ's determination to give limited credibility to the subjective complaints asserted by the plaintiff. Finally, the plaintiff contends that the ALJ did not properly analyze the limitations relating to her non-exertional limitations. (Docket No. 17 at page 5-6). The ALJ did consider the plaintiff's learning disability and complaints of depression. (R. 23, 24). The record reflects that Carter went to a psychologist on one occasion for treatment for "post traumatic stress disorder" on February 3, 2004 (seven visits had been authorized), but stopped going because she apparently could not afford the sessions. (R. 324, 350). The ALJ also noted that Dr. Tracy prescribed Wellbutrin for depression (R. 24, 349). The ALJ relied upon the findings of Dr. Ryan who stated that the plaintiff could

follow and understand simple directions and instructions, perform simple rote tasks, generally maintain attention and concentration. (R. 24). Additionally, the ALJ noted the opinion of Dr. George Burnett, a state agency reviewing psychiatrist, who opined that although Carter had some mild to moderate limitations in her ability to understand and carry out detailed instructions, or maintain concentration for extended periods of time; she had no limitations in her ability to remember locations and work-like procedures, to understand simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others, and to make simple work-related decisions. (R. 25, 236-248, 252-254). Dr. Burnett concluded that Carter was able to perform simple repetitive tasks in a work environment. (R. 248). This opinion is not inconsistent with the other clinical findings in the record.

The ALJ's determination that the plaintiff is not disable is supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, this Court recommends that the motion for judgment on the pleadings be granted and the complaint dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that the Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule**

Case 1:07-cv-00219-RJA-HBS   Document 19   Filed 12/01/08   Page 15 of 15

**72.3(a).  Failure to file objections to this Report & Recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1998).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. V. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                                                 */s/ Hugh B. Scott*
                                                                              United States Magistrate Judge
                                                                              Western District of New York

Buffalo, New York
December 1, 2008

15